Larry Dean **TURNER**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–76–16.

Court of Criminal Appeals of Oklahoma.

May 10, 1976.

Rehearing Denied June 2, 1976.

Denver W. Meacham, II, Meacham, Meacham & Meacham, Clinton, for appellant.

Larry Derryberry, Atty. Gen., Michael Jackson, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Judge:

Appellant, Larry Dean Turner, hereinafter referred to as defendant, was charged in the District Court, Custer County, Oklahoma, for the offense of Attempted Larceny of Domestic Animals, in violation of 21 O.S.1971, § 1716. Defendant filed a motion for change of venue which was sustained by the trial court and the cause was removed to Ellis County, Oklahoma, where in Case No. CRF–75–5, the defendant was tried and convicted before a jury for the offense charged. His punishment was fixed at a term of ninety (90) days under the direction and control of the Department of Corrections of the State of Oklahoma and from this judgment and sentence a timely appeal has been prefected to this Court.

Briefly stated, the evidence adduced at trial revealed that on the 6th day of March, 1974, at approximately 7:00 a. m. and while still dark, Verner Heibert, on his way to work, drove by his cattle lots located on some land on the north side of the access road to I–40, approximately three miles west of Weatherford. The acreage included a yard of approximately four acres and contained a hay barn, self-feeder, hay shed, watering facilities, holding pen with a rampless loading chute and various other buildings and equipment. The yard was fenced for utilization as cattle lots and there was access on three sides to the surrounding wheat fields, wherein the cattle often grazed. That morning, upon approaching the cattle lots from the west, he observed a U-Haul truck backed up to the loading chute, or catch pens, adjacent to the cattle lots. Without honking or making any effort to interfere with the truck, Heibert turned around and proceeded to the nearby home of Winston Gates. Gates retrieved his pistol and together they drove back to the cattle lots where they found the yard gate open and the truck gone. They proceeded east on the access road and shortly they came upon a U-Haul truck similar to the one which Heibert had ob-

served. The U-Haul truck finally turned onto Interstate 40 east and Heibert and Gates pursued, finally overtaking the truck. Gates motioned with his pistol for the driver to pull over to the side of the road. When the driver of the truck bent over and failed to stop, Heibert and Gates backed off and followed the truck until they reached a spot where Gates could get out and call the Highway Patrol. Thereafter, Heibert continued to pursue the truck alone until it was stopped by the Highway Patrol near El Reno. The driver, the defendant herein, then got out and opened up the back of the truck which was empty except for a furniture dolly. What appeared to be small amounts of manure were found on the ramp which pulled out from underneath the truck, on the rear tires, and on the mud flaps and floorboard of the truck. Samples of the soil and manure from the truck and the Heibert farm were submitted to the Oklahoma Bureau of Investigation, but no suitable comparison of the samples could be made. After the defendant's arrest at approximately 10:30 a. m., Heibert returned to his farm and discovered that the hay barn door was open, the cattle had been in the hay barn, some bales of hay had been moved, the cattle had evidently been fed and some gate panels were not in their normal positions. Tire tracks and a footprint were found in the vicinity of the loading chute and cattle tracks were found in the yard area. Also, no cattle were missing.

The Custer County Sheriff's testimony revealed that the tire tracks found in the yard were similar to the tire tracks made by the tires on the U-Haul truck, and a footprint which was found in the yard was similar to the right shoe of the defendant. The State then rested and the defendant presented no evidence.

The defendant's first assignment of error asserts that the trial court erred in overruling the defendant's motion to quash. The defendant argues that the evidence presented at the preliminary hearing was insufficient from which the trial court

could properly commit the defendant for trial under its authority in 22 O.S.1971, § 264.[1]

The evidence at the preliminary hearing essentially consisted of Verner Heibert's testimony which revealed his observation of the U-Haul truck on the morning in question and also the physical condition of his farm on that morning in relation to the physical condition of the farm when he had been there the evening before. His investigation of the farm that morning revealed various gates of the lot which had been open on the night before, closed that morning, and various steel panels used to close the gates at different locations on the cattle lot, for chasing cattle, were not in their normal positions. Testimony further revealed footprints and tire tracks in the yard, and also that bales of hay had been moved for apparent feeding of the cattle, as he had not been feeding them himself. He also stated that the hay barn door was open and that one gate was swinging loose. Richard Mueller testified at the preliminary hearing that he was Undersheriff of Custer County and that in response to a call relating to an attempt to steal some cattle, he proceeded to Heibert's farm at approximately 9:00 a. m. on March 6, 1974, and an investigation revealed a gate down, various truck tracks, leading up to a loading chute, and also footprints. He testified he made casts of the tire tracks and a footprint and that in his opinion the cast of the truck tracks at Heibert's farm were the same as casts which were made of the U-Haul truck defendant was driving at the time of his apprehension. Undersheriff Mueller's testimony further revealed that a cast of a footprint taken from the Heibert farm was the same as a cast taken of the defendant's right shoe which he was wearing when apprehended.

■ This Court, in *State v. Harris,* 44 Okl.Cr. 116, 279 P. 925 (1929), quoted with approval *State v. Bell,* 13 Okl.Cr. 664, 166 P. 451, as follows:

"'A motion to set aside an information on the ground that the proof offered at the examining trial is insufficient to establish the commission of the crime charged is addressed to the sound discretion of the trial court. . . .'"

Also see, *State v. Adams,* Okl.Cr., 400 P.2d 467 (1965), and *State v. Edmondson,* Okl.Cr., 536 P.2d 386 (1975). Also, the State is not required to present evidence at the preliminary hearing which would be sufficient to convict at trial, and there is a presumption that the State will strengthen its evidence at trial. See, *McAllister v. State,* 97 Okl.Cr. 167, 260 P.2d 454 (1973). Certainly, the State may meet its burden under 22 O.S.1971, § 264, by circumstantial evidence and such was done in this case.

■ A careful review of the transcript of the testimony taken at the preliminary examination reveals sufficient circumstantial evidence from which the examining magistrate was convinced that a public offense had been committed and that there was sufficient cause to believe the defendant committed the offense. Such ruling being in the sound discretion of the examining magistrate, we find no reason to disturb his ruling at this time. For this reason we find the defendant's first assignment of error to be without merit.

The defendant's second assignment of error asserts that the trial court erred in overruling defendant's demurrer to the evidence and failing to direct a verdict of not

---

1. Title 22 O.S.1971, § 264, reads as follows: "If, however, it appear from the examination that any public offense has been committed, and that there is sufficient cause to believe the defendant guilty thereof, the magistrate must in like manner indorse on the complaint an order signed by him to the following effect:

"It appearing to me that the offense named in the within complaint mentioned (or any other offense, according to the fact, stating generally the nature thereof), has been committed, and that there is sufficient cause to believe the within named A. B. guilty thereof, I order that he be held to answer the same."

guilty for the reason that the evidence presented at trial was wholly insufficient to prove defendant's guilt of the crime charged beyond a reasonable doubt. Defendant cites *Kidd v. State,* Okl.Cr., 462 P.2d 281 (1969), wherein this Court found that three elements must be proved in order to establish that an attempted crime was committed. The three essential elements requisite are, "(1) intent, (2) some overt act toward the commission of the crime, and (3) failure to consummate." The State concurs in the defendant's citation of law but argues that circumstantial evidence of proof of these elements is sufficient on which a jury may make a finding of guilt. See, *Hawkins v. State,* Okl. Cr., 510 P.2d 693 (1973), and *Parks v. State,* Okl.Cr., 529 P.2d 513 (1974).

■ After a careful examination of the record and in consideration of the particular facts of the case herein stated, we are of the opinion that sufficient competent evidence existed from which the jury might properly determine that the defendant was guilty as charged. See, *Jones v. State,* Okl.Cr., 468 P.2d 805 (1970). The State presented evidence at trial which showed the defendant was issued a citation by Highway Patrolman Rushing some 40 minutes prior to Heibert's observation of the U-Haul truck at his cattle lots. The patrolman testified that he issued the defendant a citation for unlawfully crossing the median of I–40 just west of Weatherford, in the vicinity of Heibert's property. He also stated that the defendant at that time was driving a U-Haul truck. The

State also presented competent evidence to connect the defendant with the U-Haul truck which Verner Heibert observed backed up to the loading chute adjacent to the cattle lots which contained Heibert's cattle. The evidence revealed that on the morning of March 6, 1974, Verner Heibert stopped at the closed entry gate into his farm with his headlights illuminating the vicinity where he observed the U-Haul truck backed up to the loading chute in the cattle lot. After proceeding to his neighbor's home nearby and returning to his farm, the truck had departed and was thereafter observed travelling east approximately one mile from the Heibert farm. We are of the opinion that the record, as a whole, contains sufficient circumstantial evidence to submit the case to the jury. For this reason this Court has no authority to invade the province of the trier of facts and make a determination of the defendant's guilt or innocence, and therefore we find this assignment of error to be without merit.

The defendant's fourth assignment of error asserts the trial court erred in overruling the defendant's ex parte motions to dismiss filed prior to trial. A careful examination of the ex parte motions do not reveal sufficient merit to necessitate discussion.

The defendant's final assignment of error asserts he was tried and convicted under unconstitutional statutes, particularly 21 O.S.1971, § 1716, and 21 O.S.1971, § 42.[2] The defendant argues that these statutes should be held invalid as being unconstitutionally vague and indefinite.

---

2. Title 21 O.S.1971, § 1716, reads as follows: "Any person in this State who shall steal any horse, jackass, jennet, mule, cow, or hog, shall be guilty of a felony and upon conviction shall be punished by confinement in the State Penitentiary for a term of not less than three years, nor more than ten years; and any person in the State who shall steal any sheep, or goat, shall be guilty of a felony and upon conviction therefor shall be punished by confinement in the State Penitentiary for a term not less than six months, nor more than three

years. The word 'horse' as used in this act, shall include all animals of the equine species and the word 'cow' shall include all animals of bovine species."
And, 21 O.S.1971, § 42, reads as follows: "Every person who attempts to commit any crime, and in such attempt does any act toward the commission of such crime, but fails, or is prevented or intercepted in the perpetration thereof, is punishable, where no provision is made by law for the punishment of such attempt, as follows: * * *"

■ We need only note that the constitutionality of 21 O.S.1971, § 1716, was upheld in *Mooney v. State,* Okl.Cr., 516 P.2d 1364 (1973). We find no reason to deviate from our holding in *Mooney, supra.*

We next turn to the defendant's assertion that 21 O.S.1971, § 42, is unconstitutional. The defendant argues that this statute, read in conjunction with 21 O.S.1971, § 1716, does not provide clear and explicit definition of what constitutes the offense of "attempted larceny of domesticated animals." Defendant again makes the general assertion that 21 O.S.1971, § 42, is vague and indefinite.

■ Statutes are presumed to be constitutional and a party attacking a statute as unconstitutional has the burden of proof. *Pugh v. State,* Okl.Cr., 416 P.2d 637 (1966), and *Williamson v. State,* Okl.Cr., 463 P.2d 1004 (1969). Further, when reasonably possible, and within the bounds of legitimate construction, statutes should be construed so as to uphold their constitutionality. *Ex parte Arnett,* 93 Okl.Cr. 116, 225 P.2d 381 (1950), and *Williamson v. State, supra.*

■■ However, in *Hayes v. Municipal Court of Oklahoma City,* Okl.Cr., 487 P.2d 974 (1971), this Court in the first paragraph of the Syllabus stated:

> "Legislation which creates and provides for the punishment of criminal offenses should be so clear and explicit that all persons of ordinary intelligence who are subject to these penalties may understand their provisions. No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes."

A statute, to be "void for vagueness," simply means that criminal responsibility should not attach where one cannot reasonably understand that his contemplated conduct is proscribed. *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989, 996 (1954) and *United States v. National Dairy Prod. Corp.,* 372 U.S. 29, 32, 33, 83 S.Ct. 594, 9 L.Ed.2d 561, 565 (1963). In considering the sufficiency of a statute, that statute must of necessity be examined in light of the conduct of which a defendant is charged. *Robinson v. United States,* 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed. 944 (1945), and *United States v. National Dairy Prod. Corp., supra,* at 372 U.S. 33, 83 S.Ct. 594.

■ The attempt statute in question is a legislative enactment aimed at a specific conduct the proscription of which is within the police power of this State. The statute is drafted in a general nature and clearly proscribes conduct of an individual which constitutes an act towards commission of a crime but is prevented or intercepted in the perpetration thereof. The statute is only applicable where a specific provision for attempt does not exist in the specific statute governing the consummated crime. We cannot agree with defendant's attack on this statute which suggests that men of ordinary intelligence would have to speculate as to the conduct therein proscribed.[3] We are thus of the opinion that individuals of ordinary intelligence have little difficulty understanding the conduct proscribed by the statute in question. For the reasons herein stated we find the statutes challenged to be constitutional and, thus, we reject the defendant's final assignment of error.

For all the above and foregoing reasons, the judgment and sentence appealed from is, accordingly, affirmed.

BRETT, P. J., and BUSSEY, J., concur.

---

3. We also observe similar statutes exist in California, West's Ann.Penal Code, § 664, and Massachusetts, M.G.L.A. c. 274, § 6. The constitutionality of the California statute was challenged in part and upheld in *In re Bandmann,* 51 Cal.2d 388, 333 P.2d 339 (1958) (rehearing denied January 21, 1959).